Tamera C. Shanker (Bar # 016016)
THE SHANKER LAW FIRM, PLC.
700 E. Baseline Road, Bldg. B
Tempe, Arizona 85283
Phone: (480) 838-9300
Facsimile: (480) 838-9433
info@shankerlaw.net

Bennet G. Kelley (CA Bar # 177001)
*Pro Hac Vice*
Internet Law Center, Ltd.
100 Wilshire Blvd. Suite 700
Santa Monica, CA 90401
Phone: (310) 452-0401


Attorneys for Defendants Platinum LED Lights, LLC;
Mark Sawyer; Michael Volkin; and Volkinator Enterprises, Inc.

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Chaverri, an individual; and Mito Red Light, Inc., an Arizona Corporation<br><br>Plaintiffs,<br><br>v.<br><br>Platinum LED Lights, LLC; a Florida limited liability company; Mark Sawyer and Jane Doe Sawyer, individuals; Michael Volkin and Jane Doe Volkin, individuals; and Volkinator Enterprises, Inc., a California corporation<br><br>Defendants. | Case No. 2:21-cv-01700-SPL<br><br>**PLATINUM DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |

## Table of Contents

LRCIV 12.1(C) CERTIFICATION ...................................................................................... 3

I. INTRODUCTION .......................................................................................................... 3

II. THE SAC FAILS TO STATE A CLAIM FOR FALSE ADVERTISING ............................ 4

**A.** **Statements Not False On Their Face** ...................................................................... 5

**B.** **Statements of Opinion** ........................................................................................... 5

*C.* *Statements of Results* ............................................................................................... 6

**(1)** **Examining Mito Red Bulbs** ................................................................................. 7

**(2)** **Measuring Mito Red Bulbs** ................................................................................ 8

**(3)** **Attacking Blog Posts** ......................................................................................... 10

III. THE SAC FAILS TO STATE A CLAIM FOR DEFAMATION ..................................... 11

IV. THE SAC FAILS TO STATE A CLAIM FOR FALSE LIGHT ...................................... 12

V. THE SAC FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE ............. 12

VIII. PLAINTIFFS CANNOT STATE A CLAIM FOR AIDING AND ABETTING OR CONSPIRACY ............................................................................................................... 13

CONCLUSION ................................................................................................................. 14

**CASES**

*Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bur. of Maricopa County, Inc.,* 637 P.2d 733, 740 (Ariz. 1981) ...............................................................13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). ...........................................5

*Breeser v. Menta Grp., Inc.*, 934 F. Supp. 2d 1150, 1162 (D. Ariz. 2013)..............11

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999)...........................................................................................................5

*Cook, Perkiss Liehe v. N.C. Collection Serv*, 911 F.2d 242, 245-46 (9th Cir. 1990) .................5

*Ellis v. Salt River Project Agric. Improvement & Power Dist.*, 432 F. Supp. 3d 1070, 1079 (D. Ariz. 2020) .....................................................................................4

*Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 787 (1989)......................12

*Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 787 (Ariz. 1989)...............11

*Groden v. Random House, Inc.*, 61 F.3d 1045, 1051 (2d Cir. 1995) .......................5

*Hart v. Seven Resorts, Inc.*, 947 P.2d 846, 854 (1997) ...........................................12

*Lundin v. Discovery Commc'ns Inc.*, 352 F. Supp. 3d 949, 960 (D. Ariz. 2018).....11

M*aloney v. Kropp*, No. CV-12-02054-PHX-DGC, at *2 (D. Ariz. Feb. 8, 2013) ......................................................................................................................13

*Marmis v. Solot Co.*, 117 Ariz. 499, 502 (Ariz. Ct. App. 1978) ............................13

*Pimal Prop., Inc. v. Capital Ins. Grp., Inc.*, No. CV11-02323-PHX-DGC, at *9 (D. Ariz. Feb. 27, 2012)..........................................................................................13

*Pinal Cty. v. Cooper ex rel. Cty. of Maricopa*, 360 P.3d 142, 147 (Ariz. Ct. App. 2015).......................................................................................................................11

*Skydive Arizona, Inc. v. Quattrocchi,* 673 F.3d 1105, 1110 (9th Cir. 2012) ............4

*U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).................................................4

*Wagenseller v. Scottsdale Mem'l Hosp.,* 710 P.2d 1025, 1043 (Ariz. 1985)...........13

Defendants Platinum LED Lights, LLC; Mark Sawyer; Michael Volkin; and Volkinator Enterprises, Inc. (collectively the "**Platinum Defendants**") removed the First Amended Complaint from Maricopa County Superior Court to this Court on October 5, 2021.  The Platinum Defendants now respectfully move the Court for its Order dismissing Plaintiffs' Second Amended Complaint (Doc. # 19) and/or certain claims contained therein for failure to state a claim against these defendants upon which relief can be granted.

**LRCIV 12.1(C) CERTIFICATION**

Counsel for Defendants Platinum LED Lights, LLC; Mark Sawyer; Michael Volkin; and Volkinator Enterprises, Inc. ("Platinum Defendants") met and conferred with Plaintiffs' counsel on September 28, 2021 via letter to determine whether the parties could resolve their differences without needing to resort to motion practice. Counsel for Defendants engaged in further meet and confer efforts via multiple email exchanges and phone calls from November 17-30, 2021. Pursuant to LRCiv 12.1(c), despite good faith efforts, counsel for the Platinum Defendants hereby certifies that the parties were unable to agree on the matters raised by this Motion to Dismiss. Counsel thus details its grounds for dismissal, which are supported by the following Memorandum of Points and Authorities.

**I.    INTRODUCTION**

Plaintiff Mito Red Light, Inc. ("**Mito Red**") markets certain red light therapy products on the internet.  (Second Amended Complaint at ¶¶ 18-20.)  The claims in the Second Amended Complaint ("**SAC**") primarily derive from certain statements made by the Platinum Defendants in a YouTube video review of Mito Red's product and certain webpages regarding Mito Red's products that reference the YouTube video (collectively "**Platinum Content**"), which Plaintiffs mischaracterize and contend give rise to causes of action for False Advertising, Defamation, False Light, and Tortious Interference with Prospective Contractual Relations.

3

As set forth below, far from rising to actionable causes of action, the Platinum Content consists of legitimate comparative advertising consisting of factual statements and opinion which are not actionable.  Since the SAC, however, expressly references but does not attach the Platinum Content and proceeds to mischaracterize their contents, the Platinum Defendants ask the court to consider the Platinum Content incorporated into the SAC by reference.  *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted) (permitting incorporation where "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim").

> Under the incorporation-by-reference doctrine, a court may consider "certain documents as though they are part of the complaint itself," *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018), "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim[s]." *Ritchie*, 342 F.3d at 907. "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002 [citations omitted].

*Ellis v. Salt River Project Agric. Improvement & Power Dist.*, 432 F. Supp. 3d 1070, 1079 (D. Ariz. 2020)

## II.     THE SAC FAILS TO STATE A CLAIM FOR FALSE ADVERTISING

In order to state a claim for False Advertising under Section 43(a) of the Lanham Act, a Plaintiff must allege (i) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (ii) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (iii) the deception is material, in that it is likely to influence the purchasing decision; (iv) the defendant caused its false statement to enter interstate commerce; and (v) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.  *Skydive Arizona, Inc. v. Quattrocchi,* 673 F.3d 1105, 1110 (9th Cir. 2012). Stating a claim also "requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do. . . Factual allegations must be enough to raise a right to relief above the speculative level. . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The core element of a False Advertising claim under the Lanham Act is a false statement of fact, as opinion or puffery are not actionable. *Cook, Perkiss Liehe v. N.C. Collection Serv*, 911 F.2d 242, 245-46 (9th Cir. 1990); see *Groden v. Random House, Inc.*, 61 F.3d 1045, 1051 (2d Cir. 1995) (citing Restatement (Third) of Unfair Competition § 3 (1993)).  The statements alleged must be "specific and measurable" and "capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999).

### A.    Statements Not False On Their Face

Mito Red bases is False Advertising Claim on fifteen (15) claimed False Statements, many of which are neither false nor capable of being proved false.  The most absurd "False Statement" is an axiomatic statement made in the YouTube video that "[l]eaders come first and then all the followers. Mito Red here is the follower." which the SAC then acknowledges is true by explaining that Mito Red is the is the "newer red-light therapy company".  (SAC at ¶ 48(b).) Moreover, even if it were false, it is hard to conceive how this could be considered material and likely to influence a purchasing decision.

Mito Red also faults the Platinum Defendants with statements warning consumers that Mito Red's asserted warranty of up to 3 years is contradicted by its website terms and that these terms provide a "loophole" to defeat that expectation.  (SAC at ¶ 66(c).)  The SAC, however, does not dispute the principal element of the claim – that Mito Red's website offers warranties of less than three years – but rather states that their website contains no loopholes whatever that is intended to mean.  (*Id*.)

### B.    Statements of Opinion

Mito Red also challenges a number of opinions stemming from a comparison of the Mito Red product to Platinum LED's product and conclusions drawn from analyzing and testing the

5

components of the Mito Red product as depicted in the YouTube video.[1]  This includes:

(i)    *Mito Red literally ripped off their [Platinum's] design.  (SAC at ¶ 48(a).)*

This a statement of opinion taken out of context.  The YouTube Video begins by explaining that the "framing construction" of the Mito Red Biomax product is similar to the Platinum LED product which predates it and the above statement is the narrator's opinion given the similarity in framing construction's design. (Volkin Decl., Ex. 1 at 0:34.)

(ii)    *They literally took the framing construction of the Platinum LED lights and just changed the logo on the side. Other than that, it's the exact same as far as a construction standpoint. (SAC at ¶ 48(c).)*

The statement above is narrow and limited to a comparison of the products as far the framing construction and merely states the author's opinion based on the similarities between the products.   (Volkin Decl., Ex. 1 at 0:51.)

(iii)    *Hopefully, from a legal perspective they will get caught. (SAC at 48(h).)*

This is not a statement of fact, but a wish that is hardly material to a consumer.

(iv)    *Design. The design of the Mito Red Lights devices is not unique either, they mostly take the designs of their competitors' devices and then use that in their own devices. And they are not providing the customers with anything new with an act like that.  (SAC at ¶ 66(d).)*

As with the above, this is merely the author's opinion based his perception of the similarities of the two products.

## C.    Statements of Results

The final class of statements in the SAC are statements regarding analysis and testing of Mito Red products by examining the bulbs used and by measuring their bulbs' performance.  In each case, Mito Red does not dispute the findings with respect to its product but rather offers a

---

[1] *See* YouTube video at < https://www.youtube.com/watch?v=MaiKfk6chuY&t=1s> and accompanying transcript. Declaration of Michael Volkin at ¶ 2, Exhibit A (hereinafter "Volkin Decl.").

different conclusion without offering more than rank speculation as a basis for that conclusion. Mito Red speculates that "there is no way to tell" if the "infrared light was turned on," that the light *might* have been turned off, and that the results of the test *may* be explained *if* the light was off. (SAC at ¶¶ *74-75.)* Mito Red then dodges the question of structural testing completely, offering up pure opinion that "irradiance" is the most important metric (*Id.* at ¶ 76). Speculation about might have beens and statements of opinion are not enough to plead a cause of action.

### (1)   Examining Mito Red Bulbs

In the YouTube video, the narrator opens up the Mito Red product to examine the bulbs used and reports as follows:

> Um, you know, red light therapy is not cheap and there's not a lot of people out there that can just buy a whole bunch of these and just take them apart. Um, so *as you can clearly see here, the bulbs are three watt, not five watt as identified on their website.* Uh, you can tell the difference because there is only one chip to this chip here, right here. There's a little, one little square chip in the center, uh, and a 5 watt should have two, uh, *this is a blatant lie on their website and just further proof of the scams that you see in the red light industry.*
>
> *So what we have here is a ripped off design with subpar components.*

(Volkin Decl., Ex. A at 1:48.)

From this display, Mito Red includes the italicized language amongst its list of False Statements but does not demonstrate their falsehood. (SAC at ¶¶ 48(d) and 48(e).) Mito Red claims the assertions that the bulbs are only three watts is false with a conclusory assertion that "Mito Red's products are truthfully advertised on Mito Red's website, as 5 watts." (Id. at ¶ 48(d)(i).) This assertion, however, when viewed in its proper context ignores the heart of the matter which is that the Mito Red bulbs are structurally different than 5-watt bulbs. Mito Red is not saying that this false, but rather merely states their belief or conclusion is that the bulbs are 5-watts without disclosing the basis for this belief. In addition, the YouTube video's 3-watt contention is not a statement that is likely to "deceive a substantial segment of its audience," because it explains the basis for its conclusion. Mito Red is free to rebut the contentions

regarding the structure of the bulbs, but chooses not to do so directly.  Instead of addressing the structural and wattage issue of the bulbs in the SAC, Mito Red dodges the issue and introduces a red herring by offering its opinion that "irradiance" is the most important metric (SAC at ¶¶22 and 76).  The SAC still does not plead facts showing that the contentions about the wattage are factually false.  Instead, they offer mere opinion about how bulb strength doesn't matter, evading the factual issue of the bulb structure. Irradiance is a unit of measurement, and Mito Red's opinion that irradiance more important than bulb strength does not magically make it a factual contention.

Mito Red employs a similar tactic with the second statement, that this is "a blatant lie on their website and just further proof of the scams that you see in the red light industry;*"* by not disputing the structural differences which is the heart of the statement but instead merely stating that Mito Red does not lie on "its website regarding its products". (*Id.* at ¶ 48(e)(i).)  Again, Mito Red does not really address the underlying premise by which the narrator reaches this conclusion.

The last statement regarding a "ripped off design with subpar components," is a statement of opinion based on the findings of examining the Mito Red bulbs.  (*Id.* at ¶ 48(f).)  Mito Red merely contends that it has the highest-quality components and does not use "subpar" components, but it does not address the contention that the Mito Red bulbs are deficient.  (*Id.* ¶ 48(f)(i).)  While the SAC is updated to plead "to the extent it is categorized as a statement of fact, Mito Red does not utilize "subpar" (i.e., below average) components in its products" (*Id*. at 48(f)(ii)) this is a meaningless equivocation which does not change the nature of the statement in question from opinion to fact.

### (2)   Measuring Mito Red Bulbs

Mito Red also complains about claims made based on measurements of the strength of the Mito Red bulbs.

In the YouTube video, the narrator transitions from discussing the structure of the Mito Red Bulbs to actually measuring their strength.  The narration text is as follows:

> *So they're trying to pass themselves off as a, you know, a Platinum LED, which is*
> *the most powerful light in the market by my testing. And they're trying to give the*

8

*appearance that they have that capability, but you can see it is clearly not the same thing. . .*

Um, now what I want to do next is . . . check out the intensity of the light so we can compare the actual intensity on the skin itself to see the effectiveness of the product. Okay. So what I'll be using to measure the iridescence is the 10 Mars solar power meter T M 2 0 6. Here's a unit right here on Mito Red's website. They have measurements for six inches out from the unit. So that is where I will place my measurement.

So here you can see the solar meter and what I've done is I've put it at six inches out from the tape measure. I have it also set at Watts per meter squared. Okay. . . . but as you can see, it's showing about 502 Watts per meter squared. So let's go over to the website and see what six inches out shows as a reading [Explaining that while the measurement is conducted in milliwats per meter squared, the Mito Red website measures per centimeter squared and the reading would need to be divided by ten for comparison.] So we're getting 50 milliwatts per centimeter squared when the website reports 135 milliwatts per centimeter squared. *So they are, under-reporting considerably two thirds of what they're saying. Uh, further proof that Mito red is a product that you should avoid.*

(Volkin Decl., Ex. A at 2:42 – 4:31.)

The SAC includes the italicized language in its list of False Statements. (SAC at ¶¶ 48(g) and 48(i).) The first statement's contention that Mito Red is trying to pass themselves off as Platinum LED or suggest they have similar capability, is a statement of opinion based on a reading of the strength of Mito Red's bulbs. Mito Red's SAC misses the essential point and merely state's their opinion that Mito Red intention is "to create a distinctive and superior red-light therapy brand and product line" and does not offer a single fact to demonstrate falsity. (SAC at ¶ 48(g)(i).) Simply bolding the portion of the quote Mito Red disagrees with does not change the context or meaning of that quote.

The SAC attempts to dispute the fact that the reading was substantially lower than what is

reported on Mito Red's website (or stated differently the website claims are 2.7 times what the reading demonstrated).  (SAC at ¶ 48(i).)  Its allegations, however, are conclusory:

> *This statement is blatantly false and misleading. MitoRed is not "underreporting"*
>
> *any information, and all of its advertising is truthful and not misleading.*
>
> *Defendants baselessly encourage viewers to "avoid" MitoRed and its products*
>
> *for unsubstantiated and false reasons.*

(SAC at ¶ 48 (i) (i).)  The FAC states no facts whatsoever and makes no attempt to dispute the results of the reading in the video beyond rank speculation that there is "no way to tell" if the light was on, that the light might have been off, and the reading might have been completely fabricated (SAC at ¶¶ 74-75).

### (3)    Attacking Blog Posts

The SAC also attacks similar statements made in two online blog posts – (i) Mito Red Light Therapy Scam: What Are They Lying About?[2] and (ii) "MYTH BUSTED: SETTLING THE 3-WATT VS 5-WATT LED DEBATE".[3]

In the first blog post, the SAC attacks two statements about the strength and wattage of the Mito Red Bulbs:

(i)    *Mito Red Lights aren't providing the same strength as they said*;

(ii)    T*he [Mito Pro 1500] device is said to provide a certain strength of light by using 5-watt chips in the light, but after dissecting the device, you will see that cheap 3-watt chips have been used in that light. Which makes the device way weaker, and cheaper too. So, the customers are getting a lot less than they paid, and getting brutally scammed.*

(SAC at ¶¶ 48(a) and (b).)

The SAC's explanation on the contention that the bulbs are not "the same strength as they said,"

---

[2] *See Mito Red Light Therapy Scam: What Are They Lying About?* at < https://redlighttherapyexposed.com/mito-red-light-therapy/> and Volkin Decl. at ¶ 3, Ex. B.

[3] See MYTH BUSTED: SETTLING THE 3-WATT VS 5-WATT LED DEBATE at <https://platinumtherapylights.com/blogs/news/myth-busted-settling-the-3-watt-vs-5-watt-led-debate> and Volkin Decl. at ¶ 4, Ex. C.

states no facts as to why they are false, just that Mito Red offers several different data points as to the power of its devices. (*Id.* at ¶ 48(a)(i).) In response to the wattage claim, Mito Red merely asserts that its bulbs are 5-Watt bulbs without addressing the demonstration that the bulbs have the structure of a 3-Watt bulb. (*Id.* at ¶ 48(b)(i)-(iii).) It fails to state facts showing that the statement about the bulbs is false. Interestingly, it also tries to contend that "using a 3-Watt bulb does not, by itself, make a device weaker or cheaper," in a failed attempt at deflection. (Id.) They also dodge the issue and yet again rely on a red herring by saying "irradiance" is the most important metric (*Id*. at ¶¶22 and 76) yet again sidestepping the issue of the structure of the bulbs (*Id*. at ¶¶74-79.)The SAC challenges the second blog post's irradiance readings at six and twelve inches, claiming that they are false since Mito Red achieves a higher result. (SAC at ¶¶ 70 (a) and (b).) The two are not mutually exclusive and, in fact, both could be true for a variety of reasons. Mito Red make no factual statement that the results reported on the blog were false, only engages in rank speculation and statements of opinion, and thus cannot state a claim based on these facts.

### III.     THE SAC FAILS TO STATE A CLAIM FOR DEFAMATION

Mito Red also alleges that the very same False Statements upon which its bases its False Advertising claim are also defamatory under Arizona law. To state a claim for defamation under Arizona law, Plaintiff must allege that (1) Defendant made a false and unprivileged statement; (2) the statement was published or communicated to someone other than Plaintiff; and (3) the statement tends to harm Plaintiff's reputation. *Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 787 (Ariz. 1989); *Lundin v. Discovery Commc'ns Inc.*, 352 F. Supp. 3d 949, 960 (D. Ariz. 2018). Only statements which may be reasonably interpreted as factual assertions, not simply statements of opinion , are actionable as defamation ." *Breeser v. Menta Grp., Inc*., 934 F. Supp. 2d 1150, 1162 (D. Ariz. 2013). The crucial inquiry is whether the finder of fact could employ an objective criteria [sic] to determine the statement's truth or falsity." *Pinal Cty. v. Cooper ex rel. Cty. of Maricopa*, 360 P.3d 142, 147 (Ariz. Ct. App. 2015).

Since the legal standard for the two claims are essentially the same, the SAC's Defamation claims must fail as well.

## IV.     THE SAC FAILS TO STATE A CLAIM FOR FALSE LIGHT

The SAC incredulously asserts that by communicating the False Statements, the Platinum Defendants placed Mito Red's CEO, Scott Chaverri "in a false light, as a scammer who operates an illegitimate business." (SAC at ¶ 126.)  To state a claim for false light invasion of privacy, a plaintiff must show "(1) the defendant, with knowledge of falsity or reckless disregard for the truth, gave publicity to information placing the plaintiff in a false light, and (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person in the plaintiff's position." *Desert Palm Surgical Grp., P.L.C. v. Petta,* 343 P.3d 438, 450 (Ariz. Ct. App. 2015).

To state a claim for false light requires that the statement at least be about the plaintiff and be "highly offensive to a reasonable person". *Hart v. Seven Resorts, Inc.*, 947 P.2d 846, 854 (1997); *Godbehere v. Phoenix Newspapers, Inc*., 783 P.2d 781, 787 (1989).  This ""extreme and outrageous conduct" requires that plaintiff prove defendant's conduct exceeded "all bounds usually tolerated by decent society . . . and [caused] mental distress of a very serious kind."" *Godbehere v. Phoenix Newspapers, Inc.,* 162 Ariz. 335, 339 (Ariz. 1989). The statements at issue are about Mito Red and never mention Mr. Chaverri.  It appears Mr. Chaverri wishes to enjoy the shield of the corporate veil, while still claiming statements about that corporation hurt him personally.[4]

In addition, with apologies to the many hard-working men and women in the red-light therapy products industry, nobody is ever going to be "highly offended" by any of the relatively mundane content highlighted in the SAC, nor are they "major misrepresentations" of character. There simply is nothing highly offensive in the debate about the merits of Mito Red's red light bulbs.

## V.     THE SAC FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE

Mito Red also contends that the publication of the False Statements constitutes tortious interference with current and prospective business relationships.  (SAC at ¶¶ 137-140.)  The elements of a claim for tortious interference with a business relationship are (1) the existence of a

---

[4] Furthermore, how far down the rabbit hole can this go?  If Mr. Chaverri can be personally harmed by statements about the corporate entity, what about any employees he might have?  Could they be harmed as well, by virtue of associaton?

12

valid business relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional and improper interference causing a disruption of the relationship, and (4) resulting damage to the party whose relationship has been disrupted. *See Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bur. of Maricopa County, Inc.,* 637 P.2d 733, 740 (Ariz. 1981); *Wagenseller v. Scottsdale Mem'l Hosp.,* 710 P.2d 1025, 1043 (Ariz. 1985).

一       The essential element of the claim, however, is improper interference.  *Miller v. Hehlen,* 104 P.3d 193, 202 (2005) ("interference must be `improper' before liability will attach"). As outlined above with respect to the False Advertising claim, there is nothing improper about the False Statements, as they are merely a legitimate form of comparative advertising that Plaintiffs are seeking to suppress via litigation.  See *Marmis v. Solot Co.*, 117 Ariz. 499, 502 (Ariz. Ct. App. 1978) ("[t]ortious interference does not occur through lawful competition").

## VIII.   PLAINTIFFS CANNOT STATE A CLAIM FOR AIDING AND ABETTING OR CONSPIRACY

Plaintiffs' final causes of action are common law claims for aiding and abetting and civil conspiracy.  Aiding and abetting tortious conduct requires three elements:

> (1) the primary tortfeasor must commit a tort that causes injury to the plaintiff;
> (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach. *Wells Fargo Bank v. Ariz. Laborers, Teamsters, and Cement Masons,* 38 P.3d 12, 24 (Ariz. 2002) (en banc).

*Pimal Prop., Inc. v. Capital Ins. Grp., Inc.*, No. CV11-02323-PHX-DGC, at *9 (D. Ariz. Feb. 27, 2012).  Similarly, a claim for civil conspiracy requires "that two or more individuals agree to accomplish an 'underlying tort.'"  M*aloney v. Kropp*, No. CV-12-02054-PHX-DGC, at *2 (D. Ariz. Feb. 8, 2013) (quoting *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund,* 38 P.3d 12, 36 (Ariz. 2002).)

13

Here there is no underlying tort, as Plaintiffs have failed to state a claim for any of the torts alleged, and, accordingly these final claims must be dismissed. *Maloney v. Kropp*, No. CV-12-02054-PHX-DGC, at *2 (D. Ariz. Feb. 8, 2013).

**CONCLUSION**

Based on the foregoing, and such further arguments that may be presented in reply or at any hearing on this matter, the Platinum Defendants respectfully request that the Court grants its Motion to Dismiss under Fed. R. Civ. Pro 12(b)(6) and deny leave to amend for Plaintiff's more specious claims made on behalf of Mr. Chaverri.

Dated:  December 2, 2021                          Respectfully submitted,


                                                 BY /s/ Bennet G. Kelley

                                                 Bennet G. Kelley
                                                 Internet Law Center, Ltd.
                                                 100 Wilshire Blvd. Suite 700
                                                 Santa Monica, CA 90401
                                                 Attorneys for Defendants Platinum LED Lights,
                                                 LLC; Mark Sawyer; Michael Volkin; and
                                                 Volkinator Enterprises, Inc.

14

STATE OF CALIFORNIA      )
                                 )     ss:
COUNTY OF LOS ANGELES   )

I am employed in the County of Los Angeles, state of California I am over the age of 18 years and am not a party to the within action. My business address is 100 Wilshire Blvd., Suite 700, Santa Monica, CA 90401.

On December 2, 2021 I served the foregoing documents described as

**PLATINUM DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

on the interested parties in this action via U.S. Mail Postage Prepaid addressed to:

Raeesabbas Mohamed
RM Warner, PLC
8283 N. Hayden Rd, Suite 229
Scottsdale, Arizona 85258

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed December 2, 2021 at Los Angeles, California.

*Bennet Kelley*

_____

Bennet Kelley