**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Chaverri, et al., | No. CV-21-01700-PHX-SPL |
| Plaintiffs, | |
| vs. | **ORDER** |
| Platinum LED Lights LLC, et al., | |
| Defendants. | |

Before the Court is Defendants' Motion to Dismiss for Failure to State a Claim. (Doc. 29). The Motion will be granted in part and denied in part as follows.

**I.    BACKGROUND**

Plaintiff Scott Chaverri is the founder and CEO of Plaintiff Mito Red Light, Inc. ("Mito Red"), a red-light therapy company that sells its products exclusively via the internet. (Doc. 19 ¶¶ 2, 18, 20). Defendant Mark Sawyer is the CEO, manager, and principal agent of Defendant Platinum LED Lights LLC ("Platinum"), collectively referred to as the "Platinum Defendants," which is also a red-light therapy company and a direct competitor of Mito Red. (Doc. 19 ¶¶ 5, 23). Defendant Michael Volkin is the CEO and principal agent of Defendant Volkinator Enterprises, Inc. ("Volkinator"), collectively referred to as the "Volkin Defendants," which provides marketing services. (Doc. 19 ¶¶ 7, 39).

Around August 2020, Plaintiffs launched their online marketing campaign for commercial-level products. (Doc. 19 ¶ 24). Plaintiffs allege that "an affiliate" in the red-

light therapy industry informed them that Mito Red was "making waves" and "forming enemies—specifically, Defendants Sawyer and Platinum." (Doc. 19 ¶ 25). Plaintiffs allege that the Platinum Defendants then hired the Volkin Defendants to "engage in a strategic defamation campaign online designed to ruin Plaintiffs' professional reputation and to divert Plaintiffs' customers away from their products and to Platinum's competitive products." (Doc. 19 ¶ 42).

Over the next several months, Defendants published various content that Plaintiffs allege contained a variety of specified false and defamatory statements. (Doc. 19 at ¶¶ 28–32, 48, 66, 70–78). First, on October 27, 2020, Defendants published a blog on Platinum's own website titled "Myth Busted: Settling The 3-Watt VS 5-Watt LED Debate." (Doc. 19 ¶ 28). Then, on December 15, 2020, they published a YouTube video under the username "Jeremy Spencers" titled "Exposed! MitoRed 1500 Red-light Therapy." (Doc. 19 ¶ 29). On April 19, 2021, both the blog and the video were republished on a website titled "Red Light Therapy Exposed," which was registered by the Platinum Defendants. (Doc. 19 ¶¶ 27, 30). On May 24, 2021, Defendants published a second blog on the "Red Light Therapy Exposed" website titled "Mito Red Light Therapy Scam: What Are They Lying About?" (Doc. 19 ¶ 31). Plaintiffs allege that Defendants created the impression that the video and the website were providing neutral reviews or critiques when in fact they were not. (Doc. 19 ¶¶ 43, 67). Defendants also created a Facebook page titled "Red Light Therapy Exposed" to disseminate the blog and video content. (Doc. 19 ¶¶ 32, 82). Finally, Plaintiffs allege that the Platinum Defendants told customers in emails that Mito Red "fabricates statistics, uses different LEDs than claimed, and that the lights are cheap and/or low quality knockoffs of Platinum's lights." (Doc. 19 ¶ 34). Plaintiffs have engaged in substantial marketing efforts and spent a large amount of money to combat the alleged defamatory content. (Doc. 19 ¶¶ 83–87).

Plaintiffs initiated this action in Maricopa County Superior Court, and it was removed to this Court on October 5, 2021. (Doc. 1). On November 1, 2021, Plaintiffs filed their Second Amended Complaint ("SAC"), alleging six counts: (1) false advertising

and unfair competition under the Lanham Act, (2) defamation and defamation per se, (3) false light invasion of privacy, (4) tortious interference with current and prospective business relationships, (5) aiding and abetting, and (6) conspiracy. (Doc. 19). On December 2, 2021, Defendants filed the instant Motion to Dismiss (Doc. 29), which is now ripe for review.

## II.   RULE 12(b)(6) STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Id.* Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).

## III.   INCORPORATION BY REFERENCE

Generally, when ruling on a motion to dismiss, a court "must disregard facts that are not alleged on the face of the complaint or contained in documents attached to the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). But under the incorporation-by-reference doctrine, "a defendant may seek to incorporate a document into the complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Videos may also be incorporated by reference when the videos "are central to the claims raised in the complaint." *Vinson v. City of Los Angeles*, No. CV 14-4488-PLA, 2014 WL 12967582, at *3 (C.D. Cal. Oct. 7, 2014) (listing cases); *see also Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1248 n.7 (9th Cir. 2013) (holding that the district court properly considered video games incorporated by reference when plaintiff's Lanham Act claim was based on the video games).

Here, Defendants request that the Court incorporate by reference the YouTube video and webpages made by Defendants about Mito Red's products. The video and webpages are the basis of Plaintiffs' claims—indeed, without them, there would be no case. The SAC links to the video and webpages throughout, and Plaintiffs do not oppose Defendants' request. The Court will therefore consider Exhibits A–C attached to Defendants' Motion (Doc. 29-1), as well as webpages that are linked to in the SAC, to be incorporated by reference.

## IV.     DISCUSSION

The Court will address each of the six counts alleged in the SAC and challenged by Defendants' Motion in turn.

### a.  False Advertising and Unfair Competition under the Lanham Act

To state a claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), Plaintiffs must allege:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement . . . .

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Defendants argue only that the SAC fails to allege the first element because the statements alleged are opinions or puffery, not false statements of fact. (Doc. 29 at 6). Whether a statement is fact or puffery "is a legal question that may be resolved on a Rule 12(b)(6) motion." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008).

Under the Lanham Act, to show falsity, "a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms*, 108 F.3d

at 1139. When assessing literal falsity, statements must be considered in their full context. *Id.* On the other hand, puffery "is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely and is not actionable." *Id.* at 1145 (internal quotation marks omitted). "Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim." *Newcal Indus., Inc.*, 513 F.3d at 1053. "[P]roduct superiority claims that are vague or highly subjective" are generally considered puffery, but "misdescriptions of specific or absolute characteristics of a product are actionable." *Southland Sod Farms*, 108 F.3d at 1145 (internal quotation marks and citations omitted). Likewise, a "measurable advertisement claim of product superiority based on product testing is not puffery." *Id.*

Defendants sort the statements alleged as false advertising into three categories: (1) statements not false on their face, (2) statements of opinion, and (3) statements of results. (Doc. 29 at 6–7). The Court will address each purported category in turn.

### i. "Statements Not False on their Face"

Defendants argue that two of the allegedly false statements "are neither false nor capable of being proved false." First, the SAC alleges that the line from the YouTube video saying, "Leaders come first and then all the followers. Mito Red here is the follower," is false and misleading because even though Mito Red is "a newer red-light therapy company," it creates its own products rather than following others. (Doc. 19 ¶ 48(b)). The video's statement is a clear example of puffery: it is vague, subjective, immeasurable, and thus, unactionable. *See OptoLum, Inc. v. Cree, Inc.*, 244 F. Supp. 3d 1005, 1011 (D. Ariz. 2017).

Second, the SAC alleges that a paragraph in one of the blog posts about Mito Red's warranties is false and misleading. The blog post says that Mito Red claims to have up to a three-year warranty even though other parts of its website "say[ ] otherwise," and that as a result, customers "might just get scammed" out of redeeming their warranties based on "loopholes" on Mito Red's website. (Doc. 19 ¶ 66(c)). The SAC alleges that those statements are false because Mito Red's warranty terms are clearly stated on its

website and in a user manual that comes with each purchased device, which do not change without notice. (Doc. 19 ¶ 66(c)). The first part of the blog post's statement—that Mito Red claims to have a three-year warranty but parts of the website say otherwise—is arguably a statement of fact, but the SAC's allegations do not suggest that that part of the statement is false or misleading; rather, the SAC alleges only that the actual warranty terms are made available to customers. The remaining parts of the blog post statement are mere puffery as they are generic and vague, using uncertain terms like "might" and subjective terms like "scam" and "loophole." Accordingly, Plaintiffs' Lanham Act claims based on these two statements will be dismissed.

### ii. "Statements of Opinion"

Defendants' Motion then moves on to four statements that it argues are statements of opinion rather than fact. The first two—the YouTube video's statement that "Mito Red literally ripped off [Platinum's] design" and that "[Mito Red] literally took the framing construction of the Platinum LED lights and just changed the logo on the side. Other than that, it's the exact same as far as a construction standpoint"—are closely related. (Doc. 19 ¶ 48(a), (c)). The SAC alleges that these statements are false because Mito Red created its products independently. (Doc. 19 ¶ 48(a), (c)). Given the use of the word "literally" and the fact that the statements refer to specific characteristics of the product, Plaintiffs have sufficiently alleged at this stage that they are statements of fact susceptible to a Lanham Act claim.

The third purported statement of opinion is the YouTube video's statement that "[h]opefully, from a legal perspective [Mito Red] will get caught," which the SAC alleges is misleading. (Doc. 19 ¶ 48(h)). Even in context, it is not clear what action the narrator hopes Mito Red will "get caught" doing, but it comes after a section of the video in which the narrator alleges that Mito Red's products use three-watt bulbs, which are less powerful than the five-watt bulbs Mito Red says it uses. (Doc. 29-1 at 6). Plaintiffs' citation to *Gerald Peters Gallery, Inc. v. Stremmel*, 815 Fed. Appx. 138 (9th Cir. 2020),

is instructive.[1] That case involved an email stating that the sender "hope[d]" a painting wasn't represented to its buyer as a certain artist's, and that the sender "really hope[d] he didn't pay a lot for it." *Id.* at 139. The Ninth Circuit reversed the district court's grant of summary judgment, holding that "a jury could easily find" that the email's assertions could be understood as a statement of fact subject to a defamation claim. *Id.* at 141. Similarly, here, it is plausible that the statement that "[h]opefully, from a legal perspective [Mito Red] will get caught," could be understood as a statement of fact that Mito Red was acting criminally, making it actionable. (Doc. 19 ¶ 48(h)).

Finally, Defendants argue that the following statement from one of the blog posts is merely opinion and is not actionable under the Lanham Act: "The design of the Mito Red Lights devices is not unique either, they mostly take the designs of their competitors' devices and then use that in their own devices. And they are not providing the customers with anything new with an act like that." (Doc. 19 ¶ 66(d)). Unlike the first two purported statements of opinion related to product construction, this statement is imprecise, generic, and vague such that it is mere puffery. *See OptoLum, Inc.*, 244 F. Supp. 3d at 1011–12. This is the only discussion of the product's design in the blog post, and it does not mention any specific components of the product nor does it make any claims reasonably susceptible of being proven false given their generality. (Doc. 29-1 at 11). Accordingly, Plaintiffs' Lanham Act claim based on this statement will be dismissed; their claims based on the other statements discussed in this section survive.

### iii.   "Statements of Results"

The remainder of the statements that Plaintiffs allege violate the Lanham Act directly involve, or are made in the inseparable context of, measurement of the wattage and irradiance of Mito Red's products. Defendants' argument for dismissal of these statements is that Mito Red makes the "conclusory assertion" that its products are

---

[1] Although *Gerald Peters Gallery, Inc.* involved a defamation claim under Nevada law, the Ninth Circuit addressed how a district court should analyze whether statements are assertions of fact or opinion, which is also applicable to Lanham Act claims.

truthfully advertised as five watts (Doc. 29 at 8) as opposed to a lower wattage alleged in Defendants' video and blog posts, and that the mere allegation that Mito Red's irradiance readings achieve a higher result does not render Defendants' readings false. (Doc. 29 at 12). Defendants' arguments misconstrue the 12(b)(6) standard. Plaintiffs have alleged facts regarding the wattage and irradiance of its products, and at this stage, the Court must credit those facts as true. Those facts make it plausible that Defendants made false statements of fact under the Lanham Act. Defendants' Motion with respect to this category of statements is based on factual issues that will be resolved at a later stage, and the Motion to Dismiss based on these statements will be denied.

In sum, Plaintiffs' Lanham Act claim survives with respect to all statements except the "follower" statement (Doc. 19 ¶ 48(b)), "warranty" statement (Doc. 19 ¶ 66(c)), and "nothing new" statement (Doc. 19 ¶ 66(d)). Leave to amend will not be granted because the fact that the statements are puffery cannot be cured. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

### b. Defamation and Defamation Per Se

"Under Arizona law, a plaintiff asserting a claim for defamation must show (1) that the defendant made a false statement; (2) that the statement was published and communicated to someone other than the plaintiff; and (3) that the statement tends to harm plaintiff's reputation." *Prostrollo v. Scottsdale Healthcare Hosps.*, No. CV-17-00409-PHX-DJH, 2018 WL 501414, at *4 (D. Ariz. Jan. 12, 2018) (citing *Godbehere v. Phx. Newspapers, Inc.*, 783 P.2d 781, 787 (Ariz. 1989)). A statement does not meet the first element if it is "not susceptible to proof of truth or falsity" and if it "cannot reasonably be interpreted as actual fact[ ]." *Turner v. Devlin*, 848 P.2d 286, 294 (Ariz. 1993). The Ninth Circuit has conflated the Lanham Act's falsity element with California's nearly identical defamation standard. *See Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 730–31 (9th Cir. 1999). Accordingly, because Defendants make no argument for dismissing the defamation claim beyond their

argument for dismissing the Lanham Act claim (Doc. 29 at 12),[2] the same result follows: Plaintiffs' defamation claims based on the "follower" statement (Doc. 19 ¶ 48(b)), "warranty" statement (Doc. 19 ¶ 66(c)), and "nothing new" statement (Doc. 19 ¶ 66(d)) will be dismissed; the claim survives with respect to all other statements.

### c. False Light Invasion of Privacy

"To establish a claim for false light invasion of privacy, a plaintiff must show (1) the defendant, with knowledge of falsity or reckless disregard for the truth, gave publicity to information placing the plaintiff in a false light, and (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person in the plaintiff's position." *Desert Palm Surgical Grp., P.L.C. v. Petta*, 343 P.3d 438, 450 (Ariz. Ct. App. 2015). Even if true, a statement may give rise to a false light claim "if it creates a false implication about the person." *Id.*

Defendants argue that Plaintiffs' false light claim, which focuses only on Mr. Chaverri individually, should be dismissed because Defendants never made any statements about Mr. Chaverri, and regardless, none of the statements in the SAC are "highly offensive." (Doc. 29 at 13). Plaintiffs respond that Mr. Chaverri can be easily identified as the CEO and founder of Mito Red via the Internet such that he was placed in a false and highly offensive light even though not specifically named. (Doc. 35 at 13).

As to Defendants' argument that the claim should be dismissed because Mr. Chaverri was never specifically named in the video or blog posts, Defendants cite no legal authority to support that argument. Rather, the Court finds helpful guidance in *Reynolds v. Reynolds*, in which the Arizona Court of Appeals held that the superior court properly dismissed the plaintiffs' false light claims when the article on which the claim was based "did not 'concern' them" and "was not capable of conveying the meaning that

---

[2] Defendants make arguments in their Reply about materiality and whether Plaintiff Chaverri is a public figure such that a heightened standard applies, but because they were not raised in the Motion, the Court need not address them. *See Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived.").

the [plaintiffs] were responsible for their mother's asserted lack of an end-of-life plan." 294 P.3d 151, 156 (Ariz. Ct. App. 2013). In contrast, here, statements made about Mr. Chaverri's business certainly concern him and are about business matters for which he was directly responsible—a fact reasonably discerned from his role at Mito Red. It is plausible, from the facts alleged in the SAC, that the statements created a false implication about Mr. Chaverri even though he was not expressly mentioned.

As to whether the statements are highly offensive, a false light claim requires "a major misrepresentation of the plaintiff's character, history, activities, or beliefs, not merely minor or unimportant inaccuracies." *Godbehere*, 783 P.2d at 787 (internal quotation marks and alterations omitted). In *Desert Palm Surgical Group, P.L.C. v. Petta*, the Arizona Court of Appeals held that the superior court properly denied the defendant's motion for judgment as a matter of law in a case involving negative online reviews posted by a patient about her doctors. 343 P.3d at 450. The court reasoned that the jury could properly have found that the negative reviews painted the doctors in a false light. *Id.* at 450. If negative reviews about the doctors' business could suffice for a jury to find a defendant liable for false light, it follows that allegations of negative reviews by a competitor suffice to plausibly state a claim for false light in this case. Thus, the Motion to Dismiss will be denied as to the false light claim.

### d. Tortious Interference with Current and Prospective Business Relationships

To state a claim for tortious interference, a plaintiff must allege facts showing:

> (1) the existence of valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bureau of Maricopa Cty., Inc.*, 637 P.2d 733, 740 (Ariz. 1981). The interference must "be *both* intentional and improper." *Safeway Ins. Co., Inc. v. Guerrero*, 106 P.3d 1020, 1026 (Ariz. 2005). "While the

'intentional' element of tortious interference focuses on the mental state of the actor, the 'improper' element in contrast generally is determined by weighing the social importance of the interest the defendant seeks to advance against the interest invaded." *Id.* (internal quotation marks and citations omitted).

Defendants argue that the SAC alleges no improper action because the statements cited "are merely a legitimate form of comparative advertising." (Doc. 29 at 14). The Court has found, however, in its analysis of the Lanham Act claim, that Plaintiffs have plausibly alleged that the advertising was false or misleading. Defendants make no other argument to support dismissal of this claim, so the Motion to Dismiss will be denied as to this count.

### e. Derivative Claims

To state a claim for aiding and abetting tortious conduct, a plaintiff must sufficiently allege three elements: "(1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Federico v. Maric*, 226 P.3d 403, 405 (Ariz. Ct. App. 2010). To state a claim for civil conspiracy, a plaintiff must allege that "two or more individuals agree[d] and thereupon accomplish[ed] an underlying tort which the alleged conspirators agreed to commit." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 36 (Ariz. 2002) (internal quotation marks omitted).

Defendants' only argument for dismissal of the aiding-and-abetting and conspiracy claims is that Plaintiffs have failed to allege an underlying tort. (Doc. 29 at 15). Because the Court finds that Plaintiffs have stated a claim for other torts, however, Defendants' argument fails and the derivative counts will not be dismissed.

///

///

///

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 29) is **granted in part** and **denied in part** as follows:

1. The Motion to Dismiss is **granted** with respect to Plaintiffs' Lanham Act and defamation claims based on the statements contained in paragraphs 48(b), 66(c), and 66(d) of the SAC; and

2. The Motion to Dismiss is **denied** in all other respects.

Dated this 24th day of January, 2022.

Honorable Steven P. Logan
United States District Judge

12