**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Scott Chaverri, et al., | No.  CV-21-01700-PHX-SPL |
| Plaintiffs, | **ORDER** |
| vs. | |
| Platinum LED Lights LLC, et al., | |
| Defendants. | |

Before the Court is Plaintiffs' Motion to Dismiss Defendants' First Amended Counterclaim for Failure to State a Claim. (Doc. 47). The Motion will be granted in part and denied in part as follows.

**I.     BACKGROUND**

Plaintiff Scott Chaverri is the founder and CEO of Plaintiff Mito Red Light, Inc. ("Mito Red"), a red-light therapy company based in Scottsdale, Arizona that sells its products exclusively via the internet. (Doc. 19 at 1–4). Defendant Mark Sawyer is the CEO, manager, and principal agent of Defendant Platinum LED Lights LLC ("Platinum"), collectively referred to as the "Platinum Defendants," which is a red-light therapy company based in Lake Mary, Florida and a direct competitor of Mito Red. (Doc. 19 at 2–4). Defendant Michael Volkin is the CEO and principal agent of Defendant Volkinator Enterprises, Inc. ("Volkinator"), collectively referred to as the "Volkin Defendants," which provides marketing services. (Doc. 19 at 2, 6).

Around March 2020, Mito Red began advertising on its website that unlike its

competitors, which used two- or three-watt bulbs in their devices, Mito Red's red-light therapy device used five-watt LED lightbulbs (hereafter referred to as "the five-watt statement"). (Doc. 46 at 4). Mito Red further claimed that because of the five-watt bulbs, its product offered greater power and higher irradiance than competing brands. (Doc. 46 at 4–5). Defendants allege that from 2020 through 2021, Platinum's customer service representatives "found that Mito Red's 5-watt claims were having a significant impact with consumers," as they received "many" calls asking about the five-watt statement and "it was evident that Platinum was losing sales to Mito Red as a result." (Doc. 46 at 6).

Platinum then hired Volkinator to investigate Mito Red's claims about the wattage and irradiance of their product. Michael Volkin allegedly found that Mito Red used three-watt bulbs, not five-watt bulbs as claimed, and that the resultant irradiance of the product was two-thirds less than Mito Red had advertised. (Doc. 46. at 6–7). In October 2020, Platinum published a blog post entitled "MYTH BUSTED: SETTLING THE 3-WATT VS 5-WATT LED DEBATE" to counter Mito Red's five-watt statement. (Doc. 46 at 7).

In response to the blog post and other alleged acts of defamation and false advertising, Plaintiffs initiated an action in Maricopa County Superior Court, which was removed to this Court on October 5, 2021. (Doc. 1). On November 1, 2021, Plaintiffs filed their Second Amended Complaint alleging six counts: (1) false advertising and unfair competition under the Lanham Act, (2) defamation and defamation per se, (3) false light invasion of privacy, (4) tortious interference with current and prospective business relationships, (5) aiding and abetting, and (6) conspiracy. (Doc. 19). On December 2, 2021, Defendants filed a Motion to Dismiss for Failure to State a Claim. (Doc. 29). The Defendants' Motion to Dismiss was granted in part and denied in part on January 24, 2022. (Doc. 37). On February 8, 2022, Defendants answered the Plaintiffs' Second Amended Complaint, asserting various defenses and counterclaims. (Doc. 39).

On March 17, 2022, Defendants filed their First Amended Counterclaim ("FAC") alleging four counts: (1) false advertising and unfair competition under the Lanham Act, (2) Racketeering Influenced and Corrupt Organizations Act ("RICO") violations,

(3) deceptive trade practices under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), and (4) abuse of process. (Doc. 46). On March 30, 2022, Plaintiffs filed a Motion to Dismiss for Failure to State a Claim. (Doc. 47). Defendants responded in opposition to the motion on April 14, 2022 (Doc. 48), and Plaintiffs replied on April 21, 2022 (Doc. 52). The issues raised in the Motion to Dismiss will now be addressed in turn.

## II.   LEGAL STANDARD

### a.   Rule 12(b)(6), Federal Rules of Civil Procedure

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Id.* Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).

### b.   Rule 9(b), Federal Rules of Civil Procedure

Under Fed. R. Civ. P. 9(b), "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Such allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Plaintiffs contend that Defendants' Lanham Act, RICO, and FDUTPA claims are subject to the heightened 9(b) pleading standard because the claims are grounded in fraud. (Doc. 47 at 3–5).

Even where fraud is not a required element of a claim, if a plaintiff alleges "a unified course of fraudulent conduct" by the defendant, and then relies "entirely on that course of conduct as the basis of a claim," then the claim is considered "'grounded in fraud' or to

'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). However, where a plaintiff alleges both fraudulent and non-fraudulent conduct in the complaint, and fraud is not an essential element of a claim, "only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)." *Id.* at 1105. Such averments of fraud "must be accompanied by 'the who, what, when, where, and how of the misconduct charged.'" *Id.* at 1106 (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Additionally, like dismissals under Rule 12(b)(6), "dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice," giving the party leave to amend. *Vess*, 317 F.3d at 1108.

## III.    DISCUSSION

Platinum argues that Plaintiffs have failed to state a claim for violations of the Lanham Act, RICO, FDUTPA, or for abuse of process. The Court will address the claims in turn.

### a.  False Advertising and Unfair Competition under the Lanham Act

The Lanham Act, 15 U.S.C. § 1125(a), "authorizes suit by 'any person who believes that he or she is likely to be damaged' by a defendant's false advertising." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (quoting 15 U.S.C. § 1125(a)(1)).

The elements for a false advertising claim under the Lanham Act are:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement . . . .

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

///

///

- 4 -

*i.   Whether Defendants' Lanham Act Allegations Are Subject to Rule 9(b)*

The Ninth Circuit has not definitively ruled on whether Rule 9(b) applies to Lanham Act claims. *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 634 (N.D. Cal. 2019). Most district court authority in the Ninth Circuit has held that the 9(b) standard does apply to false advertising claims, which therefore "requires the plaintiff to plead the 'time, place, and specific content of the false representations,' the identities of the parties to the misrepresentation, and what about the statement is claimed to be misleading." *Epicor Software Corp. v. Alternative Tech. Sols., Inc.*, No. SACV 13-00448-CJC, 2013 WL 2382262, at *4 (C.D. Cal. May 9, 2013) (internal citation omitted); *see also World Nutrition Inc. v. Advanced Enzymes USA*, No. CV-19-00265-PHX-GMS, 2019 WL 5802001 (D. Ariz. Nov. 7, 2019); *Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087 (S.D. Cal. 2017); *Seoul Laser Dieboard Sys. Co. v. Serviform, S.r.l.*, 957 F. Supp. 2d 1189 (S.D. Cal. 2013).

Defendants' false advertisement allegations expressly allege that "Mito Red's conduct was undertaken willfully and with the intention of causing confusion, mistake or deception." (Doc. 46 at 11). Notably, Defendants' Response provides no argument as to why the Court should not adopt the heightened 9(b) pleading standard for their Lanham Act claims; indeed, they fail to address Plaintiffs' Rule 9(b) argument at all. Because Defendants' false advertising claim is grounded in a "knowing and intentional misrepresentation," Rule 9(b)'s heightened pleading requirement applies to this Lanham Act claim. *23andMe, Inc. v. Ancestry.com DNA, LLC*, 356 F. Supp. 3d 889, 908 (N.D. Cal. 2018), *aff'd per curiam*, 778 F. App'x 966 (Fed. Cir. 2019).

*ii.  Whether Defendants' Lanham Act Allegations Are Adequately Pled*

1.   False Statement of Fact

Defendants' FAC divides the false advertising claim into three components, alleging that Mito Red engaged in false advertising by:

> (i) falsely claiming that its products contained 5-watt bulbs when it contained 3-watt bulbs from at least March 3, 2020 to November 2021; (ii) inflating the claimed power of its products

based on the false 5-watt claim during this period; and (iii) in substantially overstating the irradiance of its products as demonstrated by Volkinator in 2020.

(Doc. 46 at 10). However, the only false statement Defendants allege with specificity is the five-watt statement; furthermore, in Defendants' Opposition, they do not make any mention of power or irradiance as separate claims from the five-watt statement.[1] For the purpose of considering Defendants' Lanham Act claim, this Court will only look to the five-watt statement.

Defendants allege that the claim that appeared on Plaintiffs' website—"At Mito Red we use 5w LEDs"—is literally false according to an investigation performed by Mike Volkin on Defendants' behalf, as well as an investigation performed by an independent party hired by Defendants. (Doc. 46 at 4, 6, 8). Plaintiffs argue that the independent party's findings are "conclusory," "unreliable," and "need not be taken as true on a motion to dismiss." (Doc. 47 at 6). Neither party disputes that the alleged false statement constitutes commercial advertising.

The nature of the statement at issue—whether it is a statement of fact or mere non-actionable "puffery"—is a legal question for the Court. The five-watt statement is certainly a "quantifiable" statement making a claim about the "specific or absolute characteristics of a product," and is therefore an actionable statement of fact. *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) (internal citation omitted).

However, whether Plaintiffs' statement about using five-watt bulbs is literally false is a question of fact. *eMove Inc. v. SMD Software Inc*, No. CV-10-02052-PHX-JRG, 2012 WL 1379063, at *4 (D. Ariz. Apr. 20, 2012). To demonstrate falsity, "a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that

---

[1] There is no mention of "irradiance" at all in the Opposition. The only mention of "power" is in relation to the five-watt statement, as Defendants reiterate that "as stated in the FAC, Mito Red's marketing campaign that promoted its false five-watt claims deceived consumers into believing that wattage was the most important measurement and that Mito Red's five-watt bulbs were the most powerful." (Doc. 48 at 5). This suggests that the "power" and "irradiance" claims follow from the five-watt statement and are so related that they need not be presented as separate false statements for the Court to consider.

the statement was literally true but likely to mislead or confuse consumers." *Nat'l Prod., Inc. v. Gamber-Johnson LLC*, 699 F. Supp. 2d 1232, 1237 (W.D. Wash. 2010), *aff'd*, 449 F. App'x 638 (9th Cir. 2011). When assessing literal falsity, statements must be considered in their full context. *Id.*

It cannot simultaneously be true that Mito Red uses five-watt bulbs, as Plaintiffs claim, *and* that they use three-watt bulbs, as Defendants claim. As a threshold matter for this 12(b)(6) motion, it is not for the Court to weigh the factual veracity of these statements. The Court must credit the non-moving party's facts as true, making it plausible that the Plaintiffs made a literally false statement of fact on their website, which is sufficient to meet the first element of a claim for false advertising. *See, e.g.*, *Guardant Health, Inc. v. Natera, Inc.*, No. 21-CV-04062-EMC, 2022 WL 162706, at *7 (N.D. Cal. Jan. 18, 2022) ("[A]t this early stage of the proceedings . . . the issue is simply the plausibility of the asserted claims.").

### 2. Consumer Deception

To meet the second element, the false statement must "actually [deceive] or [have] the tendency to deceive a substantial segment of its audience." *Southland*, 108 F.3d at 1139. When a statement is literally false, most courts in the Ninth Circuit presume consumer deception. *See, e.g.*, *Del Webb Communities, Inc. v. Partington*, No. 2:08-cv-00571-RCJ-GWF, 2009 WL 3053709, at *13 (D. Nev. Sept. 18, 2009) (citing *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 266 (9th Cir. 1995)) ("Where an advertisement is literally false, 'a presumption arises that consumers were in fact deceived and the burden shifts to the defendant to prove otherwise.'").[2]

---

[2] Notably, the *William H. Morris Co.* case cited here does predicate the presumption on the statement not only being literally false, but *also* being *deliberately* or *intentionally* false. 66 F.3d at 258–59; *see also Nat'l Prod., Inc.*, 699 F. Supp. 2d at 1241 ("*Deliberate* falsity yields a presumption of consumer deception in cases of non-comparative advertising" (emphasis added)). However, other Courts in this Circuit have found the literal falsity of a statement sufficient to establish a presumption of consumer deception, even without the *additional* requirement that the falsity be deliberate or intentional. *See, e.g.*, *AECOM Energy & Constr., Inc. v. Ripley*, 348 F. Supp. 3d 1038, 1056 (C.D. Cal. 2018), *rev'd on other grounds*, ("Where a statement is literally false *or* the defendant intentionally set out to deceive, both actual deception and materiality are presumed." (emphasis added)); *Collegenet, Inc. v. XAP Corp.*, 442 F. Supp. 2d 1070, 1079 (D. Or. 2006) (presuming

Plaintiffs do not dispute that if Mito Red's five-watt statement is held to be literally false, deception will be presumed. (Doc. 47 at 7). Thus, Plaintiffs have presented no cogent reason the Court should not credit the Defendants' allegations as adequately pled to establish a presumption of consumer deception.

### 3. Materiality

The question remains whether Plaintiffs' five-watt statement was material, i.e., whether it was likely to influence consumers' purchasing decisions. *Southland*, 108 F.3d at 1139. "The materiality requirement is based on the premise that not all deceptions affect consumer decisions." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002). Materiality is "typically" proven through consumer surveys, but may also be proven by a consumer's declaration, which can show how the false or misleading representations have actually confused customers. *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110–11 (9th Cir. 2012); *see also ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x at 615 (finding a triable issue of materiality where "survey results and Internet message board posts" indicated that details of the statements at issue were "important factors in consumer purchasing decisions").

Plaintiffs argue that the Defendants have failed to sufficiently "show that the deception was *material* in influencing a buyer's purchasing decision," citing the *Skydive Arizona* case to support their proposition. (Doc. 47 at 7). Plaintiffs misstate the legal standard, however, as Defendants do not yet have to show or prove materiality, they must simply allege a likelihood of materiality with sufficient particularity to state a plausible claim.

Defendants' FAC alleges that the five-watt statement had a "significant impact with

consumer deception where Plaintiff asserted Defendant's statements were literally false); *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 360 F. Supp. 3d 1039, 1052 (S.D. Cal. 2019); *ITEX Corp. v. Glob. Links Corp.*, 90 F.Supp. 3d 1158, 1171–72 (D. Nev. 2015); *FLIR Sys., Inc. v. Sierra Media, Inc.*, 903 F. Supp. 2d 1120, 1129 (D. Or. 2012). These cases tend to cite the same decision from the Second Circuit, also cited in Defendants' Opposition (Doc. 48 at 4), holding that "[w]hen an advertisement is shown to be literally *or* facially false, consumer deception is presumed." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007) (emphasis added). Plaintiffs did not present any argument that this Court should not presume deception based on the alleged literal falsity of the statement alone.

consumers" based on the calls their customer service representatives received about the five-watt claims, and further alleges that "it was evident that Platinum was losing sales to Mito Red as a result." (Doc. 46 at 6). Defendants' latter statement that "it was evident that Platinum was losing sales" is conclusory in nature. However, the Court must construe as true, for the purposes of this Motion to Dismiss, their claim that "Platinum's customer service representatives fielded many calls from consumers asking about the claimed superiority of Mito Red's five-watt bulbs." (Doc. 46 at 10). This claim, if true, gives rise to a reasonable inference that the five-watt statement materially influenced numerous buyers' purchasing decisions.[3]

Furthermore, some courts in this Circuit have presumed *both* consumer deception and materiality when a statement is literally false. *See, e.g.*, *AECOM Energy & Constr., Inc.*, 348 F. Supp. 3d at 1056; *Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, No. 20CV1765-GPC(BGS), 2021 WL 1541649 at *6 (S.D. Cal. Apr. 20, 2021) ("Because Plaintiff alleged that Defendant's advertisements are literally false, the court may presume that actual deception and materiality are sufficiently alleged"); *Russell v. Walmart Inc.*, No. CV 19-5495-MWF (JCX), 2020 WL 9073046, at *12 (C.D. Cal. Oct. 16, 2020); *ITEX Corp.*, 90 F. Supp. 3d at 1173. *But see Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 310 F. Supp. 3d 1089, 1125 (S.D. Cal. 2018) ("The Court is not convinced that the Ninth Circuit has . . . determined that materiality is presumed for actually false statements . . . ."); *Pestube Sys., Inc. v. HomeTeam Pest Def., LLC*, No. CV 05-2832-PHX-MHM, 2008 WL 11448028, at *8 (D. Ariz. Mar. 31, 2008) ("The Court has found no instance where a court in the Ninth Circuit held that the rebuttable presumption applies to the element of materiality in either comparative false advertising or non-comparative false advertising cases."). The Ninth Circuit has yet to rule definitively on whether a plaintiff

---

[3] In *Skydive Arizona*, the Ninth Circuit references, and affirms, the district court's finding of materiality based in part on "evidence of numerous consumers who telephoned or came to Skydive Arizona's facility after having been deceived into believing there was an affiliation between Skydive Arizona and SKYRIDE." 673 F.3d at 1111. However, as stated in the cited *Skydive Arizona* and *ThermoLife Int'l, LLC* cases above, most questions of materiality are proven through consumer surveys or direct testimony, so Defendants will have a higher burden to prove materiality past the pleading stage.

may presume materiality along with deception when a defendant's statement has been found literally false. Other circuits have acknowledged that there is a circuit split on this issue. *See Select Comfort Corp. v. Baxter*, 996 F.3d 925, 940 (8th Cir. 2021), *cert. denied sub nom. Dires, LLC v. Select Comfort Corp.*, 142 S. Ct. 561 (2021) (declining to adopt a presumption of materiality in the Eighth Circuit); *Johnson & Johnson Vision Care*, 299 F.3d at 1250–51 (declining to adopt the presumption in the Eleventh Circuit); *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000) (presuming materiality where statements were literally false). However, because the Ninth Circuit has not clearly ruled *against* such a presumption, and especially given that the Defendants have alleged at least some facts indicating that the five- or three-watt issue is likely a material factor in customers' purchasing decisions, this Court finds materiality, like actual deception, is adequately alleged.

### 4. Interstate Commerce

Plaintiffs do not dispute that they caused their statement to enter interstate commerce by posting it on their website, and therefore waive any argument as to this element of the claim.

### 5. Injury

The standard for the fifth element of a Lanham Act false advertising claim (whether the plaintiff has been or is likely to be injured as a result of the false statement) is the same standard required to establish a presumption of injury in the context of Article III standing. *Gaspari Nutrition Inc.*, 648 F. App'x at 616 ("[T]he two standards—which are derived from the same statutory language—are one and the same."). Standing requires a plaintiff to "plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc.*, 572 U.S. at 140. The test applied to Lanham Act claims by the Ninth Circuit requires a plaintiff to show "(1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826 (9th Cir. 2011)

(internal citation omitted). "[A] false advertising plaintiff need only believe that he is *likely* to be injured in order to bring a Lanham Act claim." *Id.* at 825. Even without direct evidence of lost sales or concrete proof of injury, a plaintiff may "establish an injury by creating a chain of inferences showing how defendant's false advertising could harm plaintiff's business." *Id.* Direct competition between a plaintiff and defendant is "strong proof that plaintiffs have a stake in the outcome of the suit" sufficient to establish an injury for Article III standing. *Id.* at 825–26; *see also Gaspari Nutrition Inc.*, 648 F. App'x at 615–16 (determining that a reasonable jury could infer a presumption of commercial injury because the defendants did not dispute that they directly competed with the plaintiffs in the relevant market, and some of the statements at issue were literally false).

In this case, Plaintiffs and Defendants have attested to being direct competitors within the red-light therapy industry, providing strong evidence of a potential likelihood of commercial injury if Defendants' allegation that Plaintiff falsely advertises on its website is true. (Doc. 19 at 3; Doc. 46 at 6). Defendants have also specifically alleged that they lost sales to Plaintiffs as a result of the statements at issue in this false advertising claim. (Doc. 46 at 6). Although Defendants' allegations as to lost sales are vague and conclusory in nature, the direct competitive relationship between Platinum and Mito Red gives rise to a presumption of commercial injury sufficient to establish standing under the Lanham Act. *See TrafficSchool.com*, 653 F.3d at 826–27. This presumption is also sufficient to meet the pleading standard for the fifth element of this Lanham Act claim.  Because the parties are direct competitors, Defendants need not plead specific facts regarding lost sales or a lessening of goodwill, despite Plaintiffs' argument to the contrary (Doc. 52 at 4), for this Court to presume that a likelihood of injury is sufficiently alleged.

### 6.  Heightened Pleading Standard

Plaintiffs further allege that Defendants have failed to meet the higher Rule 9(b) burden of identifying "the who, what, when, where, and how of the misconduct charged." (Doc. 47 at 4). Plaintiffs' argument is that because Defendants' fraud allegations are based on the findings of an independent report, and because Defendants "fail to identify *who*

specifically made the findings, *how* they arrived at the findings, or any reasoning on *why* or *how* the company came to its conclusion," the 9(b) standard has not been met. (*Id.* at 5).

However, Plaintiffs mischaracterize the application of the "who, what, when, where, and how" standard to Defendants' pleadings. The 9(b) particularity requirement ensures that a charged party receives notice "of the particular misconduct which is alleged to constitute the fraud charged"—which in this case, is the five-watt statement, *not* the independent report referenced by Defendants as potential evidence of the falsity of that statement. *Semegen*, 780 F.2d at 731. Looking to the Defendants' Lanham Act claim, it clearly identifies *who* (Mito Red), *what* ("engaged in unfair competition and false advertising"), *when* ("from at least March 3, 2020 to November 2021"), *where* ("through its website"), and *how* ("falsely claiming that its products contained 5-watt bulbs when it contained 3-watt bulbs") the alleged misrepresentation occurred. (Doc. 46 at 10). Furthermore, Mito Red was clearly put on actual notice of Platinum's opposition to the five-watt statement, given that "[b]y November 25, 2021, Mito Red dropped claims that it used 5-watt bulbs from its website." (Doc. 46 at 8), a fact which Plaintiffs do not dispute. Accordingly, Defendants' Lanham Act claim is adequately pled, even under the heightened Rule 9(b) standard.

    *iii.*  Conclusion

In sum, Defendants' Lanham Act claim survives, as the Court concludes that Defendants have alleged sufficient facts to support a claim for false advertising under both the Rule 12(b)(6) and Rule 9(b) pleading standards. Accordingly, the Court denies Plaintiffs' motion to dismiss the first cause of action for false advertising under the Lanham Act.

**b.  Racketeering Influenced and Corrupt Organizations Act ("RICO")**

The Racketeering Influenced and Corrupt Organizations Act ("RICO") allows a plaintiff to bring civil suit for certain injuries to "business or property" caused by a defendant's "pattern of racketeering activity." 18 U.S.C. §§ 1964(c), 1962(c). "To state a civil RICO claim, a plaintiff must allege: '(1) conduct (2) of an enterprise (3) through a

pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property.'" *Children's Health Def. v. Facebook Inc.*, 546 F. Supp. 3d 909, 938 (N.D. Cal. 2021) (quoting *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)).

Defendants allege that Plaintiffs Mito Red and Scott Chaverri as an enterprise have violated RICO by committing a pattern of racketeering activity through wire fraud, mail fraud, and theft by false pretenses under Florida state law. (Doc. 46 at 14).

### i. Pleading Standard

The Ninth Circuit has determined that "[a] RICO claim predicated on mail or wire fraud must be pleaded in conformity with Rule 9(b)." *Sugarman v. Muddy Waters Cap. LLC*, No. 19-CV-04248-MMC, 2020 WL 633596, at \*4 (N.D. Cal. Feb. 3, 2020); *see also Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1999). Furthermore, Defendants' counterclaim specifically alleges that Plaintiffs engaged in a pattern of racketeering activity "for the purpose of intentionally defrauding consumers." (Doc. 46 at 14). Such a claim is subject to the heightened pleading standard for allegations of fraud under Rule 9(b).

Plaintiffs argue that Defendants have not alleged facts with particularity to establish that Plaintiffs had the requisite intent to defraud, and this Court agrees. (Doc. 47 at 13). Other courts in the Ninth Circuit have clarified that the existence of false advertisements alone does not necessarily imply an intent to defraud customers. *JST Distrib., LLC v. CNV.com, Inc.*, No. CV176264PSGMRWX, 2018 WL 6113092, at \*6 (C.D. Cal. Mar. 7, 2018). Although Defendants have adequately pled the requisite "who, what, when, where, and how" of the false advertising claim, they have pled no additional facts to support the mail fraud, wire fraud, or theft by false pretenses claims underlying the alleged RICO violation. *Vess*, 317 F.3d at 1106. Defendants' pleadings here mirror those presented to the court in *JST Distrib., LLC*, where the "conclusory allegations of a 'scheme to defraud and mislead consumers of their products'" were insufficient to meet the 9(b) pleading standard. 2018 WL 6113092, at \*6. Defendants' broad and bare assertion that the Mito Red Parties

"have willfully participated in the scheme to defraud . . . with the specific intent to defraud . . . and actually used interstate wires and mail to further Mito Red Parties' scheme" fails to allege *any* specific instances of mail or wire fraud, and therefore fails to allege the predicate acts with the particularity required by Rule 9(b). (Doc. 46 at 14:18–23). *See also Alan Neuman Prods., Inc.*, 862 F.2d at 1393 (finding a complaint insufficient to plead the predicate acts of mail fraud where the allegations only generally referred to "'many acts of mail fraud,' 'many acts of wire fraud,' and 'many victims.'"); *Nutrition Distrib. LLC v. Custom Nutraceuticals LLC*, 194 F. Supp. 3d 952, 957–58 (D. Ariz. 2016) (finding that a plaintiff had not adequately alleged a pattern of racketeering activity where they merely asserted that "Defendants have engaged in the illegal sale and distribution of pharmaceuticals" without identifying "any particular instance in which Defendants engaged in such activity").

However, because this Court will grant leave to amend, it will also consider Plaintiffs' additional grounds for dismissal of the RICO claim.

### ii.  Statutory Standing to Allege a RICO Claim

"To have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (internal citation omitted). To plead causation, a complaint must allege facts showing "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at 981 (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)).

Plaintiffs argue that as a threshold matter, Defendants lack standing to bring this RICO claim because (1) Defendants fail to allege a qualifying injury to their business or property, and (2) Defendants have failed to establish proximate causation between the alleged RICO violations and the claimed injuries. (Doc. 47 at 9–12). This Court agrees.

Defendants claim that as a result of Plaintiffs' racketeering scheme,

///

> [B]eginning in 2020 Platinum's customer service fielded many calls from consumers who were deceived by Mito Red's campaign and were asking about the claimed superiority of Mito Red's five-watt bulb. In responding to these calls it was became [sic] clear that Platinum was losing sales and market share to Mito Red as a result of Mito Red's false claims.

(Doc. 46 at 15). Defendants do not claim they were directly deceived or defrauded by the allegedly false five-watt statement; rather, they make the more speculative claim that because *consumers* were allegedly defrauded by the five-watt statement, Platinum "los[t] sales and market share to Mito Red."

The Ninth Circuit in *Diaz v. Gates* determined that RICO only provides a cause of action "for injuries resulting in 'concrete financial loss.'" 420 F.3d 897, 898 (9th Cir. 2005) (quoting *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992)). Furthermore, "[w]ithout a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO." *Id.* at 900. Defendants have made vague, conclusory assertions about "lost sales and expenses incurred," but they have failed to allege any specific injury to a valid business expectancy with respect to Arizona state law. (Doc. 48 at 7).

Even if this Court were to accept Defendants' allegations as sufficient to plead a "market injury," (i.e., that Platinum received fewer sales than it otherwise would have in the absence of Mito Red's unlawful conduct—a counterfactual which would be highly difficult to prove), Defendants still must establish proximate causation connecting the alleged RICO violation and the asserted injury. *See Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1169–70 (9th Cir. 2002). In contrast to the Defendants' Lanham Act claim, where injury can be inferred because the parties are competitors, for the RICO claim, Defendants must demonstrate that the RICO violation was a "substantial factor" in causing injury. *JST Distrib., LLC*, 2018 WL 6113092, at *8 (citing *Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n*, 298 F.3d 768, 773 (9th Cir. 2002)).

To determine whether an injury is too remote from an alleged RICO violation to

establish proximate causation, "[T]he Court applies the following three-factor "remoteness" test: (1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries." *Or. Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris Inc.*, 185 F.3d 957, 963 (9th Cir. 1999). The direct victims of the alleged fraudulent scheme are, according to Defendants' own allegations, *consumers*, making Platinum Defendants more remote victims of the alleged wrongful conduct. Furthermore, the difficulty of ascertaining how much economic loss is attributable to Mito Red's actions weighs heavily in the "remoteness" evaluation here.

Plaintiffs cite the Supreme Court's decision in *Anza v. Ideal Steel Supply Corp.*, which speaks to "the difficulty that can arise when a court attempts to ascertain the damages caused by some remote action." 547 U.S. 451, 458 (2006). In *Anza*, the plaintiff brought a RICO claim against the defendants under the premise that they "defraud[ed] the New York tax authority and us[ed] the proceeds from the fraud to offer lower prices designed to attract more customers," resulting in an injurious loss of sales for the plaintiff. *Id.* at 457–58. The Court concluded that such a connection was too attenuated to establish proximate causation, since "[plaintiff]'s lost sales could have resulted from factors other than [defendant]s' alleged acts of fraud. Businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of [plaintiff]'s lost sales were the product of [defendants'] decreased prices." *Id.* at 459.

Analogously, in this case, Platinum is claiming an injurious loss of sales caused by Mito Red allegedly defrauding third-party consumers, but Defendants have given no concrete factual basis for this Court to draw a reasonable inference that there is a direct relation between these two claims. Defendants do not address whether their alleged economic injury might have been caused by other factors, "such as price, productive

effectiveness, familiarity with the seller, or purchasing habits of customers." *JST Distrib., LLC*, 2018 WL 6113092, at \*8 (holding that the Plaintiffs failed to adequately plead an injury under a civil RICO claim where they "d[id] not plausibly allege that it was Defendant's alleged RICO conduct and *not* one or more of various other factors that resulted in diverted sales"). Since the inference of competitive injury—which Defendants relied upon as the basis of their Lanham Act claim—does not apply to RICO, Platinum has failed to show a direct and proximate causal relationship between the asserted injury and alleged misconduct.

### iii. Conclusion

Defendants have failed to allege a specific intent to defraud to meet the Rule 9(b) pleading standard for the acts of wire and mail fraud predicating their RICO claim. Furthermore, because Defendants have failed to plead a qualifying injury and proximate causation sufficient to establish statutory standing, their RICO claim against Plaintiffs will be dismissed.

### c. Florida Deceptive and Unfair Trade Practices Act Under Fla. Stat. § 501.204

Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") allows any "aggrieved" parties to bring claims against "those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. §§ 501.202, 501.211.

Defendants allege that "Mito Red has engaged in unfair trade practices and false advertising in violation of Fla. Stat. §501.204 through its website and marketing," primarily because of the allegedly false five-watt claim that appeared on their website and "deceived" consumers. (Doc. 46 at 11–12).

### i. Article III Standing

"To have standing to bring a FDUTPA claim in federal court, a plaintiff must satisfy the Article III standing requirements set forth in *Lujan* and its progeny." *ThermoLife Int'l LLC v. BPI Sports LLC*, No. CV-20-02091-PHX-SPL, 2021 WL 661981, at \*6 (D. Ariz.

Feb. 19, 2021), *aff'd*, No. 21-15339, 2022 WL 612669 (9th Cir. Mar. 2, 2022). The three elements to meet the constitutional minimum of standing are (1) that the plaintiff "suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not conjectural or hypothetical,'" (2) a "fairly traceable" causal connection between the injury and the defendant's action, and (3) a likelihood, more than mere speculation, that the injury can be redressed by the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations omitted). However, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* at 561.

Plaintiffs argue that Defendants have failed to meet this constitutional minimum because they have not adequately pled a concrete, traceable "injury in fact" sufficient to meet the first element of the test laid out in *Lujan*. (Doc. 47 at 14–15). However, unlike *BPI Sports LLC*, cited by Plaintiffs, where the business bringing the FDUTPA claim failed to "assert actual damages caused as a result of a defendant's 'unfair' conduct," as discussed in previously in Part III(a), Defendants have alleged a commercial injury based on Mito Red and Platinum's direct competitive relationship. 2021 WL 661981, at *6. Plaintiffs have presented no case law to distinguish why commercial injury sufficient to meet the standing requirements under the Lanham Act would not also be sufficient to establish standing under the FDUTPA, and this Court has found no case law precluding such an inference as sufficient to establish standing for an FDUTPA claim.

Although Plaintiffs make a compelling point that Defendants' allegations of lost sales were speculative and conclusory, they do not sufficiently address the likelihood of competitive injury for either the Lanham Act or the FDUTPA claims. Construing all facts in the light most favorable to Defendants, then, this Court finds a reasonable inference of commercial injury sufficient to meet the minimum of constitutional standing.

### ii. Pleading Standard

In addition to their Article III standing argument, Plaintiffs argue that as with the Lanham Act and RICO claims discussed above, Defendants have failed to meet the 9(b)

standard in their FDUTPA claim (Doc. 47 at 4).

Although "[f]ederal district courts have split as to whether FDUTPA claims are subject to Rule 9(b)," the heightened pleading standard of Rule 9(b) nonetheless applies to all claims "where the gravamen of the claim sounds in fraud." *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery*, LLC, 278 F. Supp. 3d 1307, 1328 (S.D. Fla. 2017). Clearly, Defendants' allegation sounds in fraud given their characterization of Mito Red's actions as "willful and intentional" and under "false pretenses." (Doc. 46 at 12). *See also State Farm Mut. Auto. Ins. Co. v. Feijoo*, No. 1:18-cv-23329-KMM, 2019 U.S. Dist. LEXIS 93343, at *6 (S.D. Fla. June 3, 2019) ("Here, the gravamen of the Complaint is that Feijoo 'knowingly caused the Clinic to report'. . . 'false and misleading' claims . . . ."). Thus, like its previous two claims, Defendants' FDUTPA claim is subject to the heightened pleading standard under Rule 9(b).

As discussed above in Part III(a)(*ii*)(6), Rule 9(b) puts a charged party on notice of their alleged misconduct constituting fraud. Here, because the misconduct giving rise to Defendants' FDUTPA claim is the same as that giving rise to their Lanham Act false advertising claim—i.e., the false five-watt statement—and because Plaintiffs have clearly been put on notice regarding that misconduct, the FDUTPA claim meets the 9(b) pleading standard.

### iii.  Conclusion

The Court finds that Defendants' pleadings sufficiently establish that they have Article III standing to bring their FDUTPA claim against Plaintiffs and meet the Rule 9(b) standard for allegations of fraud.

### d.  Abuse of Process

Finally, Defendants have asserted a claim for abuse of process, alleging that Plaintiffs "[seek] to use the tool of litigation as a means to punish" Defendants, and therefore "use the judicial process for an ulterior purpose not proper in the regular conduct of proceedings." (Doc. 46, 16–17).

In Arizona, the elements for an abuse of process claim are: "(1) a willful act in the

use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings." *Nienstedt v. Wetzel*, 651 P.2d 876, 881 (Ariz. Ct. App. 1982). Mere speculation that a defendant has used court proceedings with improper intent is insufficient to support a claim for abuse of process; rather, the plaintiff must show that the defendant "took an action that could not logically be explained without reference to the defendant's improper motives." *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 889 (Ariz. Ct. App. 2004). Examples of improper motives include using the litigation process to extort an opponent or exhaust their financial resources. *McCall v. Williams*, No. CV-19-05126-PHX-SMB, 2020 WL 6699493, at *5 (D. Ariz. Nov. 13, 2020), *aff'd*, No. 21-15638, 2022 WL 564604 (9th Cir. Feb. 24, 2022). "The initiation of a lawsuit alone is not enough to establish an abuse of process claim." *Wine Educ. Council v. Rangers*, No. CV-19-02235-PHX-MTL, 2020 WL 4003277, at *1 (D. Ariz. July 15, 2020).

Here, Defendants' abuse of process claim seems to be entirely based on Plaintiffs' decision to initiate and pursue litigation, allegedly "while knowing full well that the Platinum Parties were right" about the falsity of the five-watt statement. (Doc. 46 at 16). Defendants have failed to present the Court with any plausible, non-speculative reason to think Plaintiffs' decision to pursue litigation cannot be explained without reference to an improper motive. Instead, Defendants simply repeat the allegations that form the basis of the other three counts in their FAC before jumping to the conclusion that Plaintiffs must be "act[ing] with malice" for some "ulterior purpose." (Doc. 46 at 16–17).

Mere recitation of the elements required for an abuse of process claim—coupled with speculative and conclusory allegations as to Plaintiffs' intent—fails to meet the pleading standard set forth in *Twombly* and *Iqbal* and borders on frivolous.[4] For these reasons, Defendants' abuse of process claim must be dismissed.

///

///

---

[4] The Court cautions counsel for both parties against allowing the animosity that has colored this case at times (*see, e.g.*, Docs. 14, 15, 22, 30, 31) from interfering with their professional judgment and responsibilities.

1

**IV.    CONCLUSION**

2

This Court finds that Defendants' claims under the Lanham Act and FDUTPA

3

survive the Plaintiffs' Motion to Dismiss; however, the RICO and abuse of process claims

4

will be dismissed for failure to state a claim.

5

Leave to amend a deficient complaint should be freely given "when justice so

6

requires." Fed. R. Civ. P. 15(a)(2). When dismissing for failure to state a claim, "a district

7

court should grant leave to amend . . . unless it determines that the pleading could not

8

possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130

9

(9th Cir. 2000) (internal quotation marks omitted). Here, it may be possible for Defendants

10

to cure the deficiencies outlined in this Order, so the Court will grant leave to amend the

11

two dismissed claims. Accordingly,

12

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Dismiss (Doc. 47) is

13

**granted in part** and **denied in part** as follows:

14

1. The Motion to Dismiss is **denied** with respect to Defendants' false advertising

15

claim under the Lanham Act and Defendants' FDUTPA claim.

16

2. The Motion to Dismiss is **granted** with respect to Defendants' RICO claim and

17

abuse of process claim.

18

**IT IS FURTHER ORDERED** that Defendants may file a Second Amended

19

Counterclaim no later than **July 13, 2022**.

20

Dated this 22nd day of June, 2022.

21

22

Honorable Steven P. Logan
United States District Judge

23

24

25

26

27

28

- 21 -